**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **EDWARD THOMPSON and** | : | |
| **ROSALIE THOMPSON,** | : | **CIVIL ACTION** |
| **Plaintiffs,** | : | |
| | : | **No. 14-1510** |
| **v.** | : | |
| | : | |
| **CITY OF CHESTER et al.,** | : | |
| **Defendants.** | : | |

**MEMORANDUM**

**MCHUGH, J.**                                         **FEBRUARY 17, 2015**

  This is a civil rights action brought by a family living in Chester, Pennsylvania, after their home was entered, cleaned out, and sealed, during a joint operation conducted by Chester police and its Highway Department, pursuant to the local Public Health Code.  Defendants have moved to dismiss the Complaint, which asserts a range of claims.  I will grant the Motion to Dismiss, but without prejudice.

**Summary of the Facts**

  Plaintiffs Rosalie Thompson and Edward Thompson are a married couple who resided in the City of Chester, Pennsylvania at all times relevant to this dispute.  When the Complaint was filed, they were sixty three and seventy one years old, respectively.  According to the Complaint, an adult daughter resides with them who has special needs.  Defendants are the City of Chester and the Chester Police.

  According to a search warrant attached to Plaintiff's Complaint, in early March, 2012, the City of Chester received a complaint from David McNamee about conditions at Plaintiffs' property.  Mr. McNamee had visited Plaintiffs' house in his capacity as Ms. Thompson's

"support coordinator with the Delaware County Office of Intellectual Disabilities."  Mr. McNamee reported to Chester's Chief Housing Inspector that during his visit he smelled noxious odors coming from the house and found eye-level piles of clutter and debris obstructing movement and visibility inside the house.  The statement of probable cause in the warrant specifically stated that the clutter was so extreme that although McNamee knew Ms. Thompson was in the room, he could not see her only a few feet away.

Aided by police, the City executed the search warrant on Plaintiffs' property on March 13, 2012.  The warrant was based upon a presumed violation of Part 11 of the Public Health Codes, Articles 1137.04, 1134.01, and 1133.08.  City officials allegedly returned to the house on several subsequent days to remove property.

Plaintiffs allege the search was deeply traumatic for them.  The Complaint claims that city officials, including police, removed Plaintiffs from their home, held Mr. Thompson in the back of a police car for half an hour, seized a substantial amount of Plaintiffs' property, and boarded up their house.  Ms. Thompson had to live in a shelter for some time after the search. Plaintiffs maintain that the city now cannot account for the property its employees seized. Plaintiffs complain they continue to experience pain, suffering, and emotional distress because of the City's actions.

The Thompsons accuse the City of Chester of violating their civil rights by its search and seizure.  Specifically, Plaintiffs, who are white, assert that the city government "is controlled by all African Americans," and that the City seized Plaintiffs' property because of their race. Plaintiffs also accuse the Mayor and City Council of Chester of conspiring with each other to conduct the raid.

Plaintiffs filed a complaint containing a variety of overlapping claims.  Plaintiffs allege a violation of 42 U.S.C. § 1983 based on deprivations of First, Fourth, and Fourteenth Amendment rights.  They also allege Defendant participated in a conspiracy to deprive Plaintiffs of their civil rights in violation of 42 U.S.C. § 1985.  Plaintiffs separately allege violations of the Equal Protection clause of the Fourteenth Amendment, invasion of privacy under the Fourth Amendment, and false arrest.  The Complaint did not identify any particular law as the source of the false arrest claim.  Finally, the Complaint includes claims for "Property Damage" and "Personal Injury."  Complaint ¶¶ 68–79.

Defendants have filed a Motion to Dismiss Plaintiffs' Complaint for failure to state a claim.

**Standard of Review**

The Federal Rules of Civil Procedure require the dismissal of complaints that fail "to state a claim upon which relief can be granted."  FRCP 12(b)(6).  The Third Circuit directs district courts to analyze motions to dismiss for failure to state a claim in two steps.

> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief."

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009) (citations omitted).  A well-pleaded complaint must "include at least some factual allegations to support the legal claims asserted."  *Id.*  Mere "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)).

**Discussion**

I.      *Dismissal of Claims Against Defendant Chester Police*

In their Complaint, Plaintiffs name the Chester Police as a defendant.  However municipal police departments are not separate entities from the municipality within which they operate. Plaintiffs agree that this claim should be dismissed.

II.     *Dismissal of Plaintiffs' § 1983 Claim*

Defendants argue that Plaintiffs' claim under 42 U.S.C. § 1983 is insufficient because it fails to plead the City of Chester has a policy or custom as required by *Monell v. Dept. of Soc. Servs. Of the City of New York*, 436 U.S. 658 (1978).  I agree.

Defendants are correct that municipalities cannot be liable for constitutional violations of their employees through the principle of *respondeat superior*.  It is possible for a municipality to be liable for a single action by its policymakers, but  liability for a single action "attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question."  *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480–83 (1986).

In *Pembaur*, law enforcement officials received instructions to carry out an illegal search from the County Prosecutor.  The Court ruled the County Prosecutor had policymaking authority and made a considered decision to order law enforcement to commit the illegal act, rendering the municipality liable.  *Id.* at 484.  Municipal liability has been found under other fact patterns as well.  In *Owen v. City of Independence*, 445 U.S. 622 (1980), the municipality was liable when a city council and city manager were directly involved in firing an employee.  In *City of Newport*

*v. Fact Concerts Inc.*, 453 U.S. 247 (1981), a city was held liable for its council's decision to cancel the plaintiff's license to hold concerts.  In *Langford v. City of Atlantic City*, 235 F.3d 845, 850 (3d Cir. 2000), the Third Circuit ruled that a municipality could be liable for the city council's passage of a budget that eliminated an employee's job.  *See also Michalesko v. Freeland Borough*, 18 F. Supp. 3d 609, 624 (M.D. Pa. 2014) (allowing claim to proceed against borough where council specifically voted to terminate the plaintiff).

Plaintiffs here have alleged that the Mayor and City Council together decided to commit unconstitutional acts.  If the Complaint contained more than conclusory assertions of their involvement in the search and seizure of Plaintiffs' property, Plaintiffs might have asserted a plausible claim for relief.  However, the assertions in Plaintiffs' Complaint "do not permit the court to infer more than the mere possibility of misconduct."  *Iqbal*, 556 U.S. at 679.  There are no allegations of any particular actions by the Mayor or City Council.  There are no allegations these individuals took a vote or any other specific official actions.  I also note that the warrant attached to and cited in Plaintiffs' Complaint weighs against the likelihood that a *Monell* claim exists, in that it identifies Ms. Thomson's support coordinator as the complaining party.  On its face, Plaintiffs' Complaint appears to describe government action from the grass roots up, and not official action from the top down.

Plaintiffs' conclusion that the Mayor and City Council somehow caused the search and seizure is not enough to find the City of Chester liable.

For these reasons, I find that Plaintiffs have failed to state a plausible claim against the City of Chester.

5

Plaintiffs' failure to state a claim against the City of Chester requires dismissal of their federal claims.  Nonetheless, I will also address Defendants' additional arguments for dismissing Plaintiffs' specific claims of Constitutional violations.

III.    *First Amendment Claims*

Defendants argue that Plaintiffs have not alleged any violation of their First Amendment rights of speech, press, assembly, or religion.  Plaintiffs do not respond to this argument, either to concede or to object to it.  The First Amendment claim should be dismissed.  Plaintiffs do not explain in their Complaint or their response to the motion to dismiss how Defendants' conduct violated the First Amendment.  I cannot see any First Amendment violation in the facts alleged, and I will not invent any theories on Plaintiffs' behalf.

IV.    *Equal Protection Claim*

Defendants argue that Plaintiffs have failed to state an Equal Protection claim. Defendants note that while Plaintiffs allege the city conducted the raid because of the Plaintiffs' race, "[b]ald and conclusory allegations that others were treated in a dissimilar manner are not sufficient to state an equal protection claim."  Defendants' Motion at 10.  Defendants argue that Plaintiffs needed to allege that there are specific properties in similar conditions, that there have been complaints about those properties, and that the city has ignored those complaints because of the home owners' race.

The Equal Protection claim should be dismissed.  Plaintiffs are claiming they were the victims of racial profiling.  The Third Circuit explained in *Bradley v. United States*, 299 F.3d 197, 205 (3d Cir. 2002), "to make an equal protection claim in the profiling context, [a plaintiff

is] required to prove that the actions of [government] officials (1) had a discriminatory effect and (2) were motivated by a discriminatory purpose."

The first element of the claim, "discriminatory effect," requires Plaintiffs show they are members of a protected class and that they were "treated differently from similarly situated individuals in an unprotected class."  *Id.*; *see also Chambers ex rel. Chambers v. School Dist. Of Phila. Bd. Of Educ.*, 587 F.3d 176, 196 (3d Cir. 2009) (to prove a discriminatory effect, a plaintiff must "demonstrate that they received different treatment from that received by other individuals similarly situated.").

In their Complaint, Plaintiffs' description of similarly situated individuals is limited to the following:

> The Plaintiffs' home and property was in the same condition as other properties in the City of Chester, in the immediate vicinity of the Plaintiffs' home and property, which were owned by African Americans, but the Defendants did not raid their home and seize their property as they did the Plaintiffs, who were Caucasian.

Plaintiffs' Complaint ¶ 27.

Such allegations are inadequate to support the claim.  Plaintiffs' assertions of the existence of similarly situated individuals and a discriminatory purpose are little more than recitations of the elements of their claim.  Plaintiffs do not identify any specific similarly situated individuals or homes with similar clutter and debris and similar official complaints against them. Plaintiffs also fail to allege any facts supporting their claim of a discriminatory purpose. Therefore, Plaintiffs' Equal Protection claim must be dismissed.

## V.    *Fourteenth Amendment Claims Not Based on the Equal Protection Clause*

Defendants argue that to the extent Plaintiffs have alleged a violation of the Fourteenth Amendment that is distinct from their Equal Protection claim, that claim is inadequately pleaded.

It is unclear if Plaintiffs directly respond to this argument.  Plaintiffs broadly defend their § 1983 claims in their opposition to Defendants' Motion to Dismiss by asserting their Complaint includes facts supporting violations of not only the Fourteenth Amendment, but also the First, Fourth, and Fifth Amendments of the Federal Constitution as well as several sections of the Pennsylvania State Constitution.  Plaintiffs also mention the "Due Process Clause," and cite to *Parratt v. Taylor*, 451 U.S. 527 (1981) (overruled by *Daniels v. Williams*, 474 U.S. 327, 330 (1986)).  *Parratt* considered a claim under the Due Process Clause of the Fourteenth Amendment.  Because of the indirect citation to the Fourteenth Amendment's Due Process Clause and references in the original Complaint to the City's allegedly inadequate process before seizing Plaintiffs' property, I interpret the Complaint as asserting a Fourteenth Amendment Due Process claim distinct from the Equal Protection claim.

If Plaintiffs were to sue under 42 U.S.C. § 1983 for deprivation of procedural due process for the removal of their personal property, then they would have to allege facts about the process itself.  According to the Third Circuit:

> When a plaintiff sues under 42 U.S.C. § 1983 for a state actor's failure to provide procedural due process, we employ the "familiar two-stage analysis," *Robb v. City of Philadelphia*, 733 F.2d 286, 292 (3d Cir.1984), inquiring (1) whether "the asserted individual interests are encompassed within the fourteenth amendment's protection of 'life, liberty, or property' "; and (2) whether the procedures available provided the plaintiff with "due process of law."

*Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000).

It is possible that Plaintiffs may have asserted a deprivation of procedural due process.  Paragraph 23 of the Complaint alleges the Defendants seized Plaintiffs' property "without following the condemnation proceeding of the City of Chester, without a court hearing or other legal process."  However, even if one assumed such a claim were properly pleaded, Plaintiffs have still failed adequately to plead municipal liability on the part of Defendant City of Chester.

VI.     *Conspiracy Claims under 42 U.S.C. § 1985*

The Third Circuit has articulated the required elements of a § 1985(3) conspiracy claim as follows:

> The Supreme Court has made clear what a plaintiff must allege to state a claim
> under § 1985(3): "(1) a conspiracy; (2) for the purpose of depriving, either
> directly or indirectly, any person or class of persons of the equal protection of the
> laws, or of equal privileges and immunities under the laws; and (3) an act in
> furtherance of the conspiracy; (4) whereby a person is injured in his person or
> property or deprived of any right or privilege of a citizen of the United States."
> *United Bhd. of Carpenters & Joiners v. Scott,* 463 U.S. 825, 828-29, 103 S.Ct.
> 3352, 77 L.Ed.2d 1049 (1983) (citing *Griffin,* 403 U.S. at 102-03, 91 S.Ct. 1790).

*Farber v. City of Paterson*, 440 F.3d 131, 134 (3d Cir. 2006).

Defendants argue that Plaintiffs' claim here suffers from a fatal flaw:  the lack of any co-conspirator.  Defendants are correct that a conspiracy requires plural conspirators, and a municipality or other corporate body cannot conspire with its agents. *Gen. Refractories v. Fireman's Fund Ins.*, 337 F.3d 297, 313 (3d Cir. 2003) ("an entity cannot conspire with one who acts as its agent.").  *See also Sarteschi v. Pennsylvania*, 2007 WL 1217858 at *5 (M.D. Pa. April 24, 2007) ("a § 1985(3) claim can be based on a conspiracy among officers of a single entity but cannot be based on a conspiracy among the entity and its officers unless the officers acted in a personal capacity or unless independent third parties are alleged to have joined the conspiracy.").

Plaintiffs allege in their Complaint that Defendants conspired only with each other to deprive Plaintiffs of their constitutional rights.  This is plainly insufficient to plead their claim. In Plaintiffs' Opposition to the Motion to Dismiss, Plaintiffs attempt to argue that the City conspired with David McNamee, the Delaware County official whose name appears on the search warrant that Chester officials used when searching Plaintiffs' property.  These new allegations are not properly raised in a response to a motion to dismiss.  *See Com. of Pa. ex rel.*

9

*Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988); 2 James Wm. Moore et al., Moore's Federal Practice ¶ 12.34[3][2].  Moreover, given the posture of this case, where the City of Chester is the sole defendant, Plaintiffs would need to make plausible allegations that policy-making officials of the City engaged in the conspiracy with Mr. McNamee.  *See Zimmerman*, 836 F.2d at 181 (finding Pennsylvania did not allege existence of conspiracy with sufficient specificity).  Therefore, Plaintiffs' claim under 42 U.S.C. § 1985 must be dismissed.


VII.    *Plaintiffs' State Common Law Claims for False Arrest, Invasion of Privacy, Personal Injury, and Property Damage*

Defendants further move to dismiss Plaintiffs' claims "for False Arrest, Invasion of Privacy, Personal Injury, and Property Damage" as barred by the state's sovereign immunity. Plaintiffs defend their claims by arguing that their state law claims fall within the exceptions to the Pennsylvania Political Subdivision Tort Claims Act (PSTCA).


1.  False Arrest and Invasion of Privacy

First, I note that Defendants may mischaracterize two of these claims.  Plaintiffs' Complaint describes the "Invasion of Privacy" claim as one arising under the Fourth Amendment of the U.S. Constitution, not state common law.  Plaintiffs' Complaint does not identify whether the false arrest claim is a constitutional claim, a statutory claim, or a state common law claim, but given the other federal constitutional claims present in the suit, I interpret the false arrest claim to also be based on a violation of the Fourth Amendment.  With the understanding that these claims are made under § 1983 and the U.S. Constitution, I find that Defendants' arguments about state law claims are inapplicable.

Nonetheless, the Fourth Amendment claims must be dismissed because the Section 1983 claim against the City of Chester on which the constitutional claims depend must be dismissed.

2.  Personal Injury and Property Damage

I find that Plaintiffs' personal injury claims are barred by Pennsylvania's sovereign immunity, but their property damage claim is not.  The PSTCA lists eight exceptions to the immunity that Pennsylvania municipalities enjoy against state law claims: vehicle liability, care, custody or control of personal property, real property, trees, traffic controls and street lighting, utility service facilities, streets, sidewalks, and care, custody or control of animals.  42 Pa. C.S.A. § 8542(b).  None of these exceptions would allow Plaintiffs to recover from the City of Chester for personal injuries.  Plaintiffs' personal injury claim shall therefore be dismissed.

With respect to property damage, the exception covering the control of personal property provides:

> The care, custody or control of personal property of others in the possession or control of the local agency.  The only losses for which damages shall be recoverable under this paragraph are those property losses suffered with respect to the personal property in the possession or control of the local agency.

42 Pa. C.S.A. § 8542(b).  Plaintiffs' allegations that the Defendant City of Chester has apparently lost a great deal of personal property while that property was in the City's control plainly fits into the exception for personal property.

Fitting allegations into an exception to the PSTCA is not enough to state a claim, however.  Pennsylvania's Supreme Court recently wrote:

> Two prerequisites, however, must be satisfied for an exception to apply.  First, the damages must be otherwise recoverable under common law or a statute creating a cause of action, but for the defense of Section 8541 or Section 8546.  42 Pa. C.S.A. § 8542(a)(1). Second, the injury must have been "caused by the negligent acts [not acts or conduct constituting a crime, actual fraud, actual malice or willful

11

misconduct] of the local agency or an employee thereof acting within the scope of his office or duties with respect to" one of the eight exception listed in Section 8542(b).  42 Pa. C.S.A. § 8542(a)(2).

*Dorsey v. Redman*, 96 A.3d 332, 341 (Pa. 2014).

Plaintiffs have not satisfied the first prerequisite: stating a cause of action that entitles them to damages.  They demand recovery for "property damage" in conclusory terms but do not identify any cause of action, or plead specific acts of negligence in support of a cause of action. It is unclear whether the "Property Damage Claim" is a separate cause of action or merely a description of damages caused by the alleged violations of Plaintiffs' constitutional rights. Therefore, this claim is dismissed.

VIII.    *Dismissal of Plaintiffs' Punitive Damages Claims*

Plaintiffs agree to dismiss their request for punitive damages in their Complaint.

IX.    *Conclusion*

For the foregoing reasons, Plaintiffs' Complaint shall be dismissed without prejudice. An appropriate order follows.

_____ /s/ Gerald Austin McHugh
United States District Court Judge